**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW MEXICO**

| | | |
|---|---|---|
| **BRANNON WHITE, individually and on behalf of all others similarly situated,** | § § § | **CASE NO: 1:22:cv-00025** |
| **Plaintiffs,** | § § | **JURY TRIAL DEMANDED** |
| v. | § § | |
| **EOG RESOURCES, INC.,** | § § § | **COLLECTIVE ACTION PURSUANT TO 29 U.S.C. § 216(b)** |
| **Defendant.** | § | **CLASS ACTION (Fed. R. Civ. P. 23)** |

**ORIGINAL CLASS AND COLLECTIVE ACTION COMPLAINT**

1. Plaintiff Brannon White brings this lawsuit to recover unpaid overtime wages and other damages under the Fair Labor Standards Act ("FLSA") and the New Mexico Minimum Wage Act, NMSA §50-4-19, et. seq. ("NMMWA") against Defendant EOG Resources Inc. (EOG).

2. White and the other workers like him regularly worked for EOG in excess of 40 hours each week.

3. But these workers never received overtime for hours worked in excess of 40 hours in a single workweek.

4. Instead of paying overtime as required by the FLSA and NMMWA, EOG paid these workers a daily rate with no overtime pay. This collective action seeks to recover the unpaid overtime wages and other damages owed to these workers.

**JURISDICTION AND VENUE**

5. This Court has original subject matter jurisdiction pursuant to 28 U.S.C. § 1331 because this action involves a federal question under the FLSA. 29 U.S.C. § 216(b).

6. The Court has supplemental jurisdiction over state law claims pursuant to 28 U.S.C. § 1367.

7. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial

portion of the events giving rise to this action occurred in this District.

8. White worked for EOG in this District in Lea County, New Mexico.

## THE PARTIES

9. White worked for EOG as a Company Man or Drilling Consultant from approximately January 2017 through April 2020.

10. Throughout his time with EOG, he was paid a day-rate with no overtime compensation.

11. White's consent to be a party plaintiff is attached as **Exhibit A**.

12. White represents at least two classes of similarly situated co-workers

13. First, White brings this action on behalf of himself and all other similarly situated workers paid by EOG's day-rate system.

14. EOG paid each of these workers a flat amount for each day worked and failed to pay them overtime for all hours that they worked in excess of 40 hours in a workweek in accordance with the FLSA.

15. The FLSA class of similarly situated workers consists of:

**Current and former Drilling Consultants employed by or performing work on behalf of EOG Resources Company and paid a day-rate without overtime during the past three years.** (the Putative Class Members).

16. Second, White represents a class of similarly situated workers under the NMMWA pursuant to Federal Rule of Civil Procedure 23.

17. The NMMWA Class is defined as:

**Current and former Drilling Consultants employed by or performing work on behalf of EOG Resources Company in New Mexico and paid a day-rate without overtime during the past three years.**

18. EOG is a company doing business throughout the United States. EOG may be served by serving its principal office: 1111 Bagby Street Sky Lobby 2, Houston, Texas, 77002. *See* NMRA 1004(G)(2).

**COVERAGE UNDER THE FLSA**

19. For at least the past three years, EOG has been an employer within the meaning of section 3(d) of the FLSA, 29 U.S.C. § 203(d).

20. For at least the past three years, EOG has been part of an enterprise within the meaning of section 3(r) of the FLSA, 29 U.S.C. § 203(r).

21. For at least the past three years, EOG has been part of an enterprise engaged in commerce or in the production of goods for commerce within the meaning of section 3(s)(1) of the FLSA, 29 U.S.C. § 203(s)(1), in that said enterprise has and has had employees engaged in commerce or in the production of goods for commerce, or employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person and in that said enterprise has had and has an annual gross volume of sales made or business done of not less than $1,000,000 (exclusive of excise taxes at the retail level which are separately stated).

22. For at least the past three years, White and the Putative Class Members were engaged in commerce or in the production of goods for commerce.

23. EOG treated White (and indeed all its workers that it classified as independent contractors) as employees and uniformly dictated the pay practices to which White and its other employees (including its so-called "independent contractors") were subjected.

24. EOG's misclassification of White as an independent contractor does not alter its status as an employer for purposes of this FLSA collective action.

**FACTS**

25. EOG is an oil and gas exploration and production company with operations throughout the United States.

26. To complete their business objectives, EOG hires personnel to perform the necessary work.

27. Over the past three years, EOG employed dozens of individuals – including White – as Drilling Consultants (or similar positions) in several states.

28. While exact job titles and job duties may differ, these workers are subjected to the same or similar illegal pay practices for similar work.

29. Specifically, EOG paid these workers a flat sum for each day worked, regardless of the number of hours that they worked that day (or in that workweek) and failed to provide them with overtime pay for hours that they worked in excess of 40 hours in a workweek.

30. For example, White worked for EOG starting in approximately January 2017 through April 2020 as a Drilling Consultant (sometimes referred to as a Company Man in the industry).

31. Throughout his time with EOG, White was paid on a day-rate basis.

32. As a Drilling Consultant, White's primary job duties (and the job duties of all other Drilling Consultants employed by EOG who were classified as independent contractors and paid a day-rate) included ensuring that the craft work was competed according to EOG's specifications, running cement lines, and overall making sure that the drilling process is proceeding within EOG's well plan, as needed.

33. White worked well in excess of 40 hours each week while employed by EOG.

34. The work White performed was an essential part of EOG's core business.

35. During White's employment with EOG while he was classified as an independent contractor, EOG exercised control over all aspects of his job.

36. EOG did not require any substantial investment by White for him to perform the work required of him.

37. EOG determined White's opportunity for profit and loss.

38. Indeed, EOG controlled all the significant or meaningful aspects of the job duties performed by White.

39. EOG ordered the hours and locations White worked, tools used, and rates of pay received.

40. EOG controlled all aspects of White's job activities by enforcing mandatory compliance with EOG's policies, well plans and procedures.

41. No real investment was required of White to perform his job. He worked on EOG's well sites and utilized equipment and software provided by EOG to perform his job duties on EOG's behalf.

42. These workers carry out the hands-on, day-to-day production work of EOG.

43. White did not provide the equipment he worked with on a daily basis.

44. EOG made the large capital investments in buildings, machines, drilling equipment, personnel, tools, and supplied in the business in which White worked.

45. White did not incur operating expenses like rent, payroll and marketing.

46. White was economically dependent on EOG during his employment.

47. EOG set White's rates of pay, his work schedule, and prohibited him from working other jobs for other companies while he was working on jobs for EOG.

48. EOG directly determined White's opportunity for profit and loss. White's earning opportunity was based on the number of days EOG scheduled him to work.

49. Very little skill, training, or initiative was required of White to perform his job duties.

50. Indeed, the daily and weekly activities of the Putative Class Members were routine and largely governed by standardized plans, procedures, and checklists created by EOG.

51. Virtually every job function at the well site was pre-determined by EOG, including the tools to use at a job site, the data to compile, the schedule of work, and related work duties.

52. The Putative Class Members were prohibited from varying their job duties outside of the pre-determined parameters.

53. The Putative Class Members did not have any supervisory or management duties and to the extent that they did, they performed those duties solely on EOG's behalf and as EOG's representative.

54. For the purposes of an FLSA overtime claim, the Putative Class Members performed substantially similar job duties related to servicing oil and gas operations in the field.

55. White performed routine duties that were largely dictated by EOG.

56. White was not employed by EOG on a project-by-project basis.

57. In fact, while White was classified as an independent contractor, he was regularly on call for EOG and was expected to drop everything and work whenever needed.

58. The Putative Class Members also worked similar hours and were denied overtime as a result of the same illegal pay practice.

59. The Putative Class Members all worked in excess of 40 hours each week and were often scheduled for daily 12-hour shifts for weeks at a time.

60. Instead of paying them overtime, EOG paid the Putative Class Members a day-rate.

61. EOG denied the Putative Class Members overtime for any hours worked in excess of 40 hours in a single workweek.

62. EOG's policy of failing to pay its independent contractors, including White, overtime violates the FLSA because these workers are, for all purposes, employees performing non-exempt job duties.

63. It is undisputed that the contractors are maintaining and working with oilfield machinery, performing manual labor, and working long hours out in the field.

64. Because White (and EOG's other independent contractors) was misclassified as an independent contractor by EOG, he should receive overtime for all hours that he worked in excess of 40 hours in each workweek.

65. Despite knowing the FLSA and NMMWA's requirements, EOG failed to pay White and the Putative Class Members overtime for hours worked in excess of 40 hours in a single workweek.

## FLSA VIOLATIONS

66. White incorporates the preceding paragraphs by reference.

67. As set forth herein, EOG violated the FLSA by failing to pay White and the Class Members overtime at 1 and ½ times their regular rate of pay, for hours worked in excess of 40 in a workweek. 29 U.S.C. § 207(a).

68. EOG knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to pay the Putative Class Members overtime compensation. EOG's failure to pay overtime compensation to these employees was neither reasonable, nor was the decision not to pay overtime made in good faith.

69. Accordingly, White and all those who are similarly situated are entitled to overtime wages under the FLSA in an amount equal to 1.5 times their rate of pay, plus liquidated damages, attorney's fees, and costs.

## NMMWA VIOLATIONS

70. White brings this claim under the NMMWA as a Rule 23 class action.

71. The conduct alleged violates the NMMWA (NMSA § 50-4-22).

72. At all relevant times, EOG was subject to the requirements of the NMMWA.

73. At all relevant times, EOG employed White and each Class Member with New Mexico state law claims as an "employee" within the meaning of the NMMWA.

74. The NMMWA requires employers like EOG to pay employees at one and one-half (1.5) times the regular rate of pay for hours worked in excess of 40 hours in any one week. White and each member of the New Mexico Class are entitled to overtime pay under the NMMWA.

75. EOG had a policy and practice of misclassifying White and each member of the New Mexico class as contractors and failing to pay these workers overtime for hours worked in excess of 40 hours per workweek.

76. White and each member of the New Mexico Class seek unpaid overtime in amount equal to 1.5 times the regular rate of pay for work performed in excess of 40 hours in a workweek, prejudgment interest, all available penalty wages, and such other legal and equitable relief as the Court deems just and proper.

77. White and each member of the New Mexico Class also seek recovery of attorneys' fees, costs, and expenses of this action, to be paid by EOG, as provided by the NMMWA.

78. The improper pay practices at issue were part of a continuing course of conduct, entitling White and New Mexico Class Members to recover for all such violations, regardless of the date they occurred.

### CLASS AND COLLECTIVE ACTION ALLEGATIONS

79. White incorporates all previous paragraphs and alleges that the illegal pay practices EOG imposed on them were likewise imposed on the members of the class.

80. Numerous individuals were victimized by this pattern, practice, and policy which is in willful violation of the FLSA and the NMMWA.

81. Numerous other individuals who worked with White indicated they were improperly classified as contractors, paid in the same manner, performed similar work, and were not properly compensated for all hours worked as required by state and federal wage laws.

82. Based on his experiences and tenure with EOG, White is aware that EOG's illegal practices were imposed on the members of the class.

83. EOG used day rate contractors across the United States.

84. The members of the class were all improperly classified as contractors and not afforded overtime compensation when they worked in excess of forty 40 hours per week.

85. EOG is the true employer of White and the Putative Class Members.

86. EOG's failure to pay wages and overtime compensation at the rates required by state and/or federal law result from generally applicable, systematic policies, and practices which are not dependent on the personal circumstances of the members of the class.

87. White's experiences are therefore typical of the experiences of the members of the class.

88. The specific job titles or precise job locations of the various members of the class do not prevent class or collective treatment.

89. White has no interests contrary to, or in conflict with, the members of the class. Like each member of the class, White has an interest in obtaining the unpaid overtime wages owed under state and/or federal law.

90. A class and collective action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

91. Absent this action, many members of the class likely will not obtain redress of their injuries and EOG will reap the unjust benefits of violating the FLSA and the NMMWA.

92. Furthermore, even if some of the members of the class could afford individual

litigation against EOG, it would be unduly burdensome to the judicial system.

93. Concentrating the litigation in one forum will promote judicial economy and parity among the claims of individual members of the classes and provide for judicial consistency.

94. The questions of law and fact common to each of the members of the class predominate over any questions affecting solely the individual members. Among the common questions of law and fact are:

    (a) Whether EOG employed the members of the class within the meaning of the FLSA and the NMMWA;

    (b) Whether the members of the class were improperly misclassified as contractors;

    (c) Whether EOG's decision to classify the members of the class was made in good faith;

    (d) Whether EOG's decision to not pay time and a half for overtime to the members of the class was made in good faith;

    (e) Whether EOG's violations of the FLSA was willful; and

    (f) Whether EOG's illegal pay practices were applied uniformly across the nation to all members of the class.

95. White's claims are typical of the claims of the members of the class. Plaintiffs and the members of the class sustained damages arising out of EOG's illegal and uniform employment policy.

96. White knows of no difficulty that will be encountered in the management of this litigation that would preclude their ability to go forward as a collective action.

97. Although the issue of damages may be somewhat individual in character, there is no detraction from the common nucleus of liability facts. Therefore, this issue does not preclude collective action treatment.

### JURY DEMAND

98. White demands a trial by jury.

**RELIEF SOUGHT**

WHEREFORE, Plaintiffs pray for judgment against EOG as follows:

(a) For an order allowing this action to proceed as a FLSA collective action and directing notice to the class;

(b) For an order pursuant to section 16(b) of the FLSA finding EOG liable for unpaid back wages, and an equal amount of liquidated damages, due to White and the class members;

(c) For an order designating the state law class as a class action pursuant to FED. R. CIV. P. 23;

(d) For an order awarding White and the class members the costs of this action;

(e) For an order awarding White and the class members their attorneys' fees;

(f) For an order awarding White and the class members unpaid benefits and compensation in connection with the FLSA and state law violations;

(g) For an order awarding White and the class members pre- and post-judgment interest at the highest rates allowed by law; and

(h) For an order granting such other and further relief as may be necessary and appropriate.

>Respectfully submitted,
>
>By: _/s/ Michael A. Josephson_
>    Michael A. Josephson
>    Texas Bar No. 24014780
>    Andrew W. Dunlap
>    Texas Bar No. 24078444
>    **JOSEPHSON DUNLAP LAW FIRM**
>    11 Greenway Plaza, Suite 3050
>    Houston, Texas 77005
>    713-352-1100 – Telephone
>    713-352-3300 – Facsimile
>    mjosephson@mybackwages.com
>    adunlap@mybackwages.com
>
>    AND
>
>    Richard J. (Rex) Burch
>    Texas Bar No. 24001807
>    **BRUCKNER BURCH PLLC**
>    11 Greenway Plaza, Suite 3025
>    Houston, Texas 77046
>    713-877-8788 – Telephone
>    713-877-8065 – Facsimile
>    rburch@brucknerburch.com
>
>    **ATTORNEYS IN CHARGE FOR PLAINTIFF**

12